FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAR 2 3 2007
3:40
Stephan Harris, Clerk
Cheyenne

# United States District Court
## For The District of Wyoming

CRAIG BLUMHAGEN,

Plaintiff,

vs.

JOHN F. COYLE, D.O. et. al.,

Defendants.

Civil No. 06-CV-00178-J

**ORDER RULING ON PLAINTIFF'S MOTION TO STRIKE DEFENSE EXPERT ROBERT JONES, M.D.**

The above-entitled matter, having come before the Court on the Plaintiff's Motion to Strike Defense Expert Robert Jones, M.D., and the Court, having carefully considered the motion, response and reply thereto, and being fully advised in the premises, FINDS:

1. This action originally comes before the Court on the plaintiff's claims arising under 42 U.S.C § 1983 for violations of plaintiff's constitutional right to medical care while incarcerated at the Wyoming State Penitentiary. Specifically, plaintiff, an inmate under the care, custody, and control of the Wyoming Department of Corrections, alleges that defendants, John Coyle, D.O. and Stephen Noyes, P.A., breached their duty of care by failing to diagnose and/or treat plaintiff's peptic ulcer disease in a timely or competent manner. Plaintiff claims that as a result of defendants actions plaintiff suffered near fatal injuries during his incarceration at the Wyoming State Penitentiary. Further, plaintiff claims that defendants, Coyle and Noyes, retaliated against plaintiff for exercising

his constitutional rights to access the courts and freedom of speech. Additionally, plaintiff asserts that defendant, Correctional Medical Services, is liable under the doctrine of *respondeat superior* for the actions of its employees, defendants Coyle and Noyes. Plaintiff seeks monetary damages, punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

2. In the instant motion, plaintiff moves the Court to enter an order striking defendants' expert witness Robert Jones, M.D. Plaintiff asserts that defendants have not complied with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and that Dr. Jones' report lacks "a complete statement of all opinions to be expressed and the basis and reasons" for his opinions. (*Motion to Strike Defense Expert Robert Jones, M.D.*, at 3). Plaintiff argues that the testimony of Dr. Jones regarding "deliberate indifference" would usurp the role of the trial judge in instructing the jury as to the applicable law and would invade the jury's province to apply that law to the facts of the case. Plaintiff also argues that jurors must decide whether the facts presented at trial may establish that the defendants had a sufficiently culpable state of mind that meets the level of deliberate indifference, and this function of the jury is performed only after the judge instructs the jury on the definition of deliberate indifference. Plaintiff states that "deliberate indifference" is a legal term which is at issue in this case and is subject to the court's instructions and not the subject of expert testimony. Plaintiff argues Dr. Jones' testimony is impermissible and states a legal conclusion based on a legal term to be defined by the trial judge. Further, expert testimony must be excluded where an expert seeks to define operative legal terms and invade the jury's province by telling it what

decision to reach.

3. Defendants have responded by asserting that Dr. Jones' report complics with Rule 26(a)(2)(B) of the Fed.R.Civ.P. and Rule 26.1 of the U.S.D.C.L.R by stating his basis and identifying the medical records reviewed in forming his opinion. Defendants asscrt Dr. Jones' testimony, regarding whether the defendants were deliberately indifferent, is based on national standards and practices within the general community as well as correctional facilities. Defendants have also offered to provide more specific opinions to plaintiff if required. With regard to plaintiff's argument that Dr. Jones' testimony is impermissible because he attempts to define the law to the jury, defendants contend that Dr. Jones' testimony is not attempting to define the law, but only to assist the jury in the fact-finding function. Defendants argue that expert testimony is permissible when a witness refers to the law in expressing an opinion and such testimony will not be inadmissible. Defendants contend that Dr. Jones will provide expert testimony regarding the standards of care for correctional facilities and whether defendants met that care and that Dr. Jones' testimony will refer to the term "deliberate indifference" since that is the standard applicable to correctional facilities. Defendants assert that Dr. Jones' testimony will address the subjective component of deliberate indifference, regarding the exercise of medical judgment and this testimony is proper and should be allowed.

4. In reply, plaintiff asserts that the authority relied upon by defendants clearly supports the prohibition of Dr. Jones' testimony, and that his testimony regarding the standard of medical care is duplicitous. Plaintiff contends the standard of medical care for doctors is not diminished in a

correctional facility and that Dr. Jones' report provides no reason why the applicable standard of medical care should be considered differently in a correctional facility setting. Plaintiff also argues Dr. Jones' report does not specify what facts he relied upon in reaching his conclusions, what national standards he used to form his opinions, or why expert testimony is required to assist the jury in understanding the standards applicable to correctional facilities. Further, plaintiff asserts that defendants have other experts designated to testify to the prevailing standard of medical care at issue in this case and Dr. Jones' testimony is inadmissible under the federal rules. Finally, plaintiff asserts that defendants' reliance on cases from the District of Columbia requiring expert testimony on the standard of care for correctional facilities are inapposite here, as that line of cases refer specifically to the lack of standard of care experts on medical negligence claims.

5.     The Court begins its determination of whether Dr. Jones' testimony is permissible under the federal rules by noting that Federal Rules of Evidence Rule 702, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

According to the Tenth Circuit, "an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact finding function." *Zuchel v. City and County of Denver, CO.*, 997 F.2d 730, 742 (10th Cir. 1993). *See A.E. by and through Evans v. Ind. School Dist. No. 25, of Adair Co., Oklahoma*, 936 F.2d 472, 476 (10th

Cir. 1991)(citing *United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979)( "an expert may not state legal conclusions drawn by applying the law to the facts."); *United States v. Vreeken*, 803 F.2d 1085, 1091 (10th Cir. 1986)("questions of law are the subject of the court's instructions and not the subject of expert testimony.").

6. In addressing plaintiff's contention that Dr. Jones' testimony is impermissible and outside the bounds of the federal rules, the Court notes that Federal Rules of Evidence Rule 704 states that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." While expert testimony on ultimate facts in authorized under Rule 704, the committee's comments emphasize that testimony on ultimate questions of law is not favored. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). "The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case." *Id.* "While other experts may aid a jury by rendering opinions on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury." *Id.* at 808, 809. According to Rule 704 of the Federal Rules of Evidence, testimony which offers nothing more than a legal conclusion is excludable under the federal rules, and "ultimate issue" testimony is also excludable when the "terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (citing *United States v. Sheffey*, 57 F.3d 1419, 1426 (6th Cir. 1995). In *Woods v. Lecureux*, the Sixth Circuit, in

deciding whether an expert witness in a § 1983/Eighth Amendment case similar to this case, should be allowed to testify to whether the defendant was deliberately indifferent, addressed two prior Sixth Circuit cases, *Heflin v. Stewart County*, 958 F.2d 709 (6th Cir.), *cert. denied*, 506 U.S. 998 (1992) and *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995), which dealt with the same question. In *Heflin*, the court concluded that it was proper for a witness to use "deliberately indifferent"in the way an ordinary layman would in stating his opinion, but that it would be improper for the expert to state a legal conclusion. *Woods*, 110 F.3d at 1220 (citing *Heflin v. Stewart County*, 958 F.2d 709 (6th Cir.), *cert. denied*, 506 U.S. 998 (1992). In *Berry*, the court found that an expert witness' testimony defining the legal term "deliberate indifference" was inadmissible and that "[i]t is the responsibility of the court, not testifying witnesses, to define legal terms." *Berry*, 25 F.3d at 1353. After discussing *Heflin* and *Berry* in *Woods*, the Sixth Circuit, in deciding whether the district court abused its discretion in excluding expert testimony regarding "deliberate indifference," stated that

> whether a prison official acted with deliberate indifference depends on that official's state of mind. Thus, by expressing the opinion that [defendant] was deliberately indifferent, [the expert witness] gives the false impression that he knows the answer to this inquiry, which depends on the [defendant's] mental state. For a witness to stack inference upon inference and then state an opinion regarding the ultimate issue is even more likely to be unhelpful to the trier of fact.

*Woods*, 110 F.3d at 1221.

7. It is in the trial court's discretion to restrict an expert witness' testimony regarding the dictates of deliberate indifference law. *See Haley v. Gross*, 86 F.3d 630, 645 (7th. Cir. 1996)

(holding that it was within the trial court's discretion to prevent expert witness from testifying to the dictates of deliberate indifference law); *Woods*, 110 F.3d at 1221 (the district court did not abuse its discretion by excluding an expert witness' testimony on "deliberate indifference."); *Carter v.McKenna*, 2006 WL 62844, * 5 (W.D.Mich. 2006) (holding that an cxpcrt witness' opinion that medical treatment "represents a deliberate indifference to a serious medical need is an inadmissible legal conclusion. Experts' opinions on the ultimate issue of deliberate indifference are expressions of a legal conclusion and are outside the scope of admissible expert testimony.") (citing *Soles v. Ingham County*, 316 F.Supp.2d 536, 542 (W.D. Mich. 2004); *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994)). In *Berry*, the Sixth Circuit, in addressing whether an expert may opine on the ultimate question of liability, stated that when the Federal Rules of Evidence speak of "an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." *Berry*, 25 F.3d at 1353.

> Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard-explicit or implicit to the jury. Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury.

*Id.* at 1354.

8. Here, as stated in his report, Dr. Jones will testify to the legal conclusion that "within a reasonable degree of medical probability . . . Mr. Blumhagen's care was within the standard of care for correction facilities and does not in any way support a claim of deliberate indifference," and that

there is "nothing in the medical records or information reviewed to support Mr. Blumhagen's allegations that [defendants] were deliberately indifferent to the medical needs of Mr. Blumhagen." (All Listed Defendants' Joint Designation of Expert Witnesses, at 4.) By expressing the opinion that the defendants were not deliberately indifferent, Dr. Jones gives the false impression that he knows the answer to this inquiry, which depends on the mental state of the defendants. *See Woods*, 110 F.3d at 1221.  There is a substantial danger the jury would simply adopt Dr. Jones' conclusions rather than making its own decision. *See Specht*, 853 F.2d at 809.  Dr. Jones' testimony will attempt to delineate the standard for deliberate indifference and draw a legal conclusion to this legal term to the jury.  This is an impermissible use of expert testimony under the federal rules and, therefore, plaintiff's Motion to Strike Defense Expert Robert Jones, M.D. will be granted.

     9.     The Court also notes that U.S.D.C.L.R. 26.1(g)(1) limits a party to the designation of one expert witness to testify for each particular field of expertise.  The Court finds that defendants' designation of Dr. Jones with regard to the standard of medical care is duplicitous and not helpful to the trier of fact.  Defendants' other expert witnesses, Dr. Kevin Duke and Dr. Raoul Joubran, will testify to the same standard of care for the treatment of plaintiff, regarding whether the defendants were negligent or breached the standard of care as that relates to the treatment of Mr. Blumhagen. (All Listed Defendants' Joint Designation of Expert Witnesses p. 7, 12).  The standard of care for medical treatment in a correctional facility is no different from the standard of care for medical treatment for a person not confined in a correctional facility.  The fact that these three experts practice in different specialties of gastroenterology, osteopathy and correctional health care

does not lessen the redundancy of Dr. Jones' testimony, and will not significantly assist the trier of fact in this case. Whatever minimal assistance the trier of fact would gain from the testimony of Dr. Jones is far outweighed by the prejudice it would engender. Repetitious and duplicitous testimony is prejudicial since it may cause the trier of fact to give greater weight to the testimony of two or more experts and more readily accept duplicitous opinions. This is precisely what the Courts and Federal Rules try to prevent. After careful review, the Court finds the designation of Dr. Jones and his admissible testimony outside the discussion of "deliberate indifference" regarding the applicable standard of care is duplicitous and will order plaintiff's Motion to Strike Expert Witness Robert Jones, M.D.

10. Additionally, pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Wyoming regarding expert witness designations, opposing parties are entitled to a detailed disclosure of the information that adversarial experts are relying upon in formulating their expert opinions. *See* Fed. R. Civ. P. 26(a)(2); U.S.D.C.L.R. 26.1(f); *Smith v. Ford Motor Company*, 626 F.2d 784 (10th Cir. 1980). Specifically, Rule 26(a)(2) of the Federal Rules of Civil Procedure requires that a party's disclosure of expert testimony include:

> a complete statement of *all opinions to be expressed and the bases and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions*; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has

> testified as an expert at trial or by deposition within the preceding four years.

Fed R. Civ. P. 26(a)(2) (emphasis added). In addition, Rule 26.1(g)(4) of the Local Rules of the United States District Court for the District of Wyoming, which complements Rule 26 of the Federal Rules of Civil Procedure, uses identical language in requiring that an expert witness designation include, "a comprehensive statement of *each* of the opinions of such witness and the factual basis for *each* opinion." U.S.D.C.L.R. 26.1(g)(4) (emphasis added). In *Smith v. Ford Motor Company*, the seminal Tenth Circuit case pertaining to expert witness testimony, the United States Court of Appeals for the Tenth Circuit, quoting renowned professor Jack H. Friedenthal, explained the importance of full and complete disclosure under Rule 26:

> It is fundamental that opportunity be had for full cross-examination, and this cannot be done properly in many cases without resort to pretrial discovery, particularly when expert witnesses are involved. Unlike two eye-witnesses who disagree, two experts who disagree are not necessarily basing their testimony on their views of the same objective features. Instead they may rely on entirely separate data, since the theoretical bases underlying their respective approaches may differ radically. Before an attorney can even hope to deal on cross-examination with an unfavorable expert opinion he must have some idea of the bases of that opinion and the data relied upon. If the attorney is required to await examination at trial to get this information, he often will have too little time to recognize and expose vulnerable spots in the testimony. He may need advice of his own experts to do so and indeed, in certain cases, his experts might require time to make further inspections and analyses of their own.

*Smith*, 626 F.2d at 794 (*quoting* Jack H. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 STAN. L. REV. 455, 485 (1962)). More simply put, the intent and policy

behind the federal and local rules regarding expert witness designations is to take the guesswork out of expert testimony for all parties involved in litigation. Without the information described above, opposing parties are unable to prepare for cross-examination, and experts are unable to adequately analyze the opinions and credibility of other experts.

11. The Court notes there is a compelling need to properly designate expert witnesses. Without proper designations, the opposing party cannot be fully apprised of all of the expert's opinions, and of equal importance, the bases of those opinions. The Court has viewed the defendants' expert witness designation of Dr. Jones and finds the information provided within the designation is insufficient to comply with Rule 26 of the Federal Rules of Civil Procedure, U.S.D.C.L.R. 26.1, and this Courts Initial Pretrial Order. Specifically, the Court finds this designation fails to include a comprehensive statement of the expert's opinions, and the corresponding factual basis for each opinion. Additionally, defendants only provides a very brief, overall statement of what the witness relied upon in forming his opinions. For example, the designation of Dr. Jones states that "based on Mr. Blumhagen's records and information, Dr. Jones is of the opinion within a reasonable degree of medical probability that Mr. Blumhagen's care was within the standard of care for correctional facilities and does not in any way support a claim of deliberate indifference." Designation, at 4. This passage provides the expert's opinion, but provides little or no bases to support how the expert arrived at that opinion, nor does it explain how the standard of care for medical care in correctional facilities is any different of that from the general community. Plaintiff is entitled to a *detailed* description of what the witnesses relied upon in

forming *each* particular opinion so that plaintiff may adequately prepare discovery for the deposition and cross-examination of the witness at trial. Dr. Jones' report fails to include the requisite information and, therefore, the Court will grant plaintiff's motion to strike Dr. Jones.

12. The Court finds that by expressing opinions which state the legal term "deliberate indifference" and draw legal conclusions regarding whether the defendants were deliberately indifferent, Dr. Jones' testimony is impermissible and must be excluded under the federal rules. Additionally, the Court finds the designation of Dr. Jones is duplicitous in violation U.S.D.C.L.R. 26.1(g)(1). Finally, under the Federal Rules of Civil Procedure 26(a)(2) and U.S.D.C.L.R. 26.1(g)(4), the requirement for a factual basis for each of Dr. Jones' opinions has not been fulfilled. Therefore, based upon all the foregoing the Court will strike the testimony of Robert Jones, M.D.

NOW, THEREFORE, IT IS ORDERED that plaintiff's Motion to Strike Defense Expert Robert Jones, M.D. be, and the same hereby is, GRANTED.

Dated this 23rd day of March, 2007.

William C. Beaman

William C. Beaman, United States Magistrate Judge